**NOTICE:**

Please be advised that this corrected document is filed in connection with the redaction of certain potentially confidential personal information in a document previously filed in your bankruptcy case by the creditor identified herein. This corrected document is otherwise identical to the original document in all respects. The substance of the document has not been changed in any way.

| | |
|---|---|
| Debtor 1 | Tamika Maria Smith aka Tamika Maria Grant |
| Debtor 2 (Spouse, if filing) | aka Tamika Hilton |

United States Bankruptcy Court for the: Middle District of Pennsylvania

Case number 16-bk-00833-JJT

Official Form 410

# Proof of Claim

**12/15**

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

PNC Bank, National Association
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| PNC Bank, N.A.<br>Name | PNC Bank, N.A.<br>Name |
| 3232 Newmark Drive<br>Number     Street | 3232 Newmark Drive<br>Number     Street |
| Miamisburg     OH     45342<br>City          State     ZIP Code | Miamisburg     OH     45342<br>City          State     ZIP Code |
| Contact phone 866-754-0659 | Contact phone 866-754-0659 |
| Contact email _____ | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____     Filed on _____
                                                                    MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

6. **Do you have any number you use to identify the debtor?**
☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __1__ __4__ __4__ __4__

7. **How much is the claim?** $ _____290,282.13__ . **Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

__Mortgage and Note_____

9. **Is all or part of the claim secured?**
☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**
☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** __Recorded Mortgage_____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____
**Amount of the claim that is secured:** $ ____290,282.13__
**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ ____40,359.42__

**Annual Interest Rate** (when case was filed) __4.00__ %
☑ Fixed
☐ Variable

10. **Is this claim based on a lease?**
☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

11. **Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   06/22/2016
                   MM / DD / YYYY

/s/ Morris Scott
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Morris Scott | | |
|---|---|---|---|
| | First name | Middle name | Last name |

| Title | Attorney |
|---|---|

| Company | Udren Law Offices, P.C. |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | 111 Woodcrest Road, Suite 200 | | |
|---|---|---|---|
| | Number   Street | | |
| | Cherry Hill | NJ | 08003 |
| | City | State | ZIP Code |

| Contact phone | 856-669-5400 | Email | mscott@udren.com |
|---|---|---|---|

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

### Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 16-bk-00833-JJT |
| Debtor 1: | Tamika Maria Smith aka Tamika |
| Debtor 2: | Maria Grant akaTamika Hilton |
| Last 4 digits to identify: | 1444 __ __ __ |
| Creditor: | PNC Bank, National Association |
| Servicer: | PNC Bank, National Association |
| Fixed accrual/daily simple interest/other: | Fixed - 4.000% |

### Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | $250,970.99 |
| Interest due: | $20,077.68 |
| Fees, costs due: | $7,390.90 |
| Escrow deficiency for funds advanced: | $12,542.56 |
| Less total funds on hand: | – |
| Total debt: | $290,982.13 |

### Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | $17,728.08 |
| Prepetition fees due: | $7,390.90 |
| Escrow deficiency for funds advanced: | $12,542.56 |
| Projected escrow shortage: | $2,697.88 |
| Less funds on hand: | – |
| Total prepetition arrearage: | $40,359.42 |

### Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | $738.67 |
| Monthly escrow: | $550.84 |
| Private mortgage insurance: | |
| Total monthly payment: | $1,289.51 |

**\*\*\* LOAN HISTORY ATTACHED \*\*\***

### Part 5 : Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

Official Form 410A          Mortgage Proof of Claim Attachment          page 1 of __

Case number: _____

Debtor 1: _____

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** Date | **B.** Contractual payment amount | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges balance | **Q.** Unapplied funds balance |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

Case 5:15-bk-00833-RNO   Doc 84-4 Filed 05/29/19 Entered 05/29/19 13:25:01 Desc
Main Document   Page 6 of 46

Case 5:16-bk-00833-RNO   Doc 325   Filed 05/28/19 Entered 05/28/19 12:08:16   Desc
Claim Document   Page 6 of 45

TARIKA M SMITH

| Date | Loan Due Date | Tran | Description | MISP Payment | Funds Received | Principal | Interest | Escrow Payment | Disbursement from Escrow | Escrow Balance | Late Charge Fees | Late Charge Balance | Property Inspection Fee | Other Fees | Spead/pay Fee | Corp Fees (MISC Corp Adv) | Corp Fee Balance | Corp Fees (3RD Corp Adv) | Corp Fee Balance | Corp Fees (MISC Corp Adv) | Corp Fee Balance | Suspense Account | Suspense Balance | Additional Principal | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|



**PNC MORTGAGE**

P.O. Box 1820
Dayton, Ohio 45401-1820
Website: pnc.com/homehq
Customer Service 1-800-822-5626

**ESCROW ACCOUNT
DISCLOSURE STATEMENT**

LOAN NUMBER: ▮▮▮▮▮
DATE: March 9, 2016

TAMIKA M SMITH
145 FAWN LN
ALBRIGHTSVLLE PA 18210-7745

---

| CURRENT MONTHLY MORTGAGE PAYMENT | |
|---|---|
| Principal & Interest | 738.67 |
| Escrow | 537.42 |
| Prorated Escrow Shortage | 55.70 |
| Total Payment | 1,331.79 |

| NEW PAYMENT INFORMATION | |
|---|---|
| Principal & Interest | 738.67 |
| Escrow | 550.84 |
| Total Payment | 1,289.51 |
| New Payment Effective Date | 03/01/16 |

---

**COMING YEAR ESCROW PROJECTION**

This statement provides a detailed summary of activity related to your escrow account. PNC Mortgage maintains your escrow account to pay such items as property taxes, insurance premiums, and mortgage insurance.

This section lists a 12-month running escrow balance to determine the appropriate target balance and to determine if a shortage or surplus exists. This is a projection of the anticipated activity in your escrow account for the coming 12 months.

**ANTICIPATED ESCROW DISBURSEMENT**

| CITY TAX | $1,135.27 |
|---|---|
| TAXES | $4,316.81 |
| HAZARD INS | $1,158.00 |
| | |
| TOTAL DISBURSEMENTS | $6,610.08 |
| DIVIDED BY 12 MONTHS | |
| MONTHLY ESCROW DEPOSIT | $550.84 |

**CALCULATION OF ESCROW ADJUSTMENT**

| BEGINNING PROJECTED BALANCE | $1,099.20 |
|---|---|
| BEGINNING REQUIRED BALANCE | $2,697.88 |
| | |
| ESCROW SHORTAGE | $1,598.68 |

The required minimum balance allowed by federal law (RESPA) is two times your monthly escrow payment (excluding MIP/PMI), unless your mortgage document or state law specifies a lower amount.

| MONTH | PAYMENTS TO ESCROW | DESCRIPTION | PAYMENTS FROM ESCROW | CUR BAL PROJECTION | REQ BAL PROJECTION |
|---|---|---|---|---|---|
| | | BEGINNING BALANCE | | 1,099.20 | 2,697.88 |
| March | 550.84 | | | 1,650.04 | 3,248.72 |
| April | 550.84 | CITY TAX | 1,135.27 | 1,065.61 | 2,664.29 |
| May | 550.84 | | | 1,616.45 | 3,215.13 |
| June | 550.84 | | | 2,167.29 | 3,765.97 |
| July | 550.84 | | | 2,718.13 | 4,316.81 |
| August | 550.84 | | | 3,268.97 | 4,867.65 |
| September | 550.84 | SCHOOL TAX | 4,316.81 | -497.00 * | 1,101.69 ** |
| October | 550.84 | | | 53.84 | 1,652.52 |
| November | 550.84 | | | 604.68 | 2,203.36 |
| December | 550.84 | HAZARD INS | 1,158.00 | -2.48 | 1,596.20 |
| January | 550.84 | | | 548.36 | 2,147.04 |
| February | 550.84 | | | 1,099.20 | 2,697.88 |

* The projected escrow balance at the low point.
** The lowest balance the escrow account should attain during the projected period.

**MORE INFORMATION ON REVERSE SIDE**

---

**IMPORTANT MESSAGES**

Make your check, money order or cashier's check payable to PNC Mortgage. All Payments must be funds from a U.S. Bank Account and are subject to PNC's acceptance. Do NOT send cash by mail.

We understand that you have filed for bankruptcy and have not yet received a discharge. None of the information requested in this statement will be used for the collection of any debts or for purposes prohibited by the Bankruptcy Code or other applicable Federal or state law.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

INTERNET REPRINT

**PNC MORTGAGE**

**ESCROW SHORTAGE COUPON**

Customer Name: TAMIKA M SMITH

Account Number: ▮▮▮▮▮    Shortage Amount: $1,598.68

PNC MORTGAGE
PO BOX 6534
CAROL STREAM IL 60197-6534

If you wish to pay the shortage amount in full, please mail a check for the shortage amount, along with this coupon, in the envelope provided. When paying your escrow shortage, please do not make your payment via electronic on-line banking, as it will not be applied directly to escrow. Payment should be remitted no later than 15 business days after receipt of this notification. Your new monthly mortgage payment will be reduced to $1,289.51 once you pay the shortage amount. **In order to avoid a delay in the processing of your payment, please DO NOT include your mortgage payment with the shortage payment.**

This is a copy of your escrow shortage coupon. If you cannot find your original statement, please contact Customer Service at 800-822-5626 to request a new payment coupon or setup your escrow shortage payment online. Please DO NOT print and mail a copy of this coupon with your payment as it cannot be processed properly.

# ESCROW ACCOUNT DISCLOSURE STATEMENT

LOAN NUMBER: █████████

DATE: March 9, 2016

Your projected escrow balance as of 02/29/16 is $1,099.20. Your required beginning escrow balance, according to this analysis, should be $2,697.88. This means you have a shortage of $1,598.68. We have divided the shortage interest-free, over 0 months. If you choose to pay the shortage in full, then your new monthly mortgage payment will be reduced to $1,289.51.

Once during this analysis period, your required escrow balance should be reduced to a target balance of $1,101.68, as it does in September. Under Federal law, your target balance should not exceed an amount equal to two months of escrow payments for taxes and insurance, unless your mortgage document or state law specifies a lower amount.

## Projected Activity from the Previous Analysis

This is a projection of the activity for your escrow account from the Previous Analysis. This projection was based on the disbursements anticipated to be made from your escrow account. Compare this projection to the actual escrow activity in the Account History (summarized below).

The escrow payment in this projection may not equal the escrow payment in the Account History if an adjustment was made to collect a shortage or refund a surplus.

Adjustments to the payment and differences between the anticipated and actual disbursements may prevent the actual balance from reaching the projected low escrow balance.

| Date | Description | Payments | Disbursements | Balance |
|------|-------------|----------|---------------|---------|
| | BEGINNING BALANCE | | | 1,912.11 |
| 01/14 | | 537.42 | | 2,449.53 |
| 02/14 | | 537.42 | | 2,986.95 |
| 03/14 | | 537.42 | | 3,524.37 |
| 04/14 | CITY TAX | 537.42 | 1,135.27 | 2,926.52 |
| 05/14 | | 537.42 | | 3,463.94 |
| 06/14 | | 537.42 | | 4,001.36 |
| 07/14 | | 537.42 | | 4,538.78 |
| 08/14 | | 537.42 | | 5,076.20 |
| 09/14 | SCHOOL TAX | 537.42 | 4,538.78 | 1,074.84 ** |
| 10/14 | | 537.42 | | 1,612.26 |
| 11/14 | | 537.42 | | 2,149.68 |
| 12/14 | HAZARD INS | 537.42 | 775.00 | 1,912.10 |
| TOTAL | | 6,449.04 | 6,449.05 | |

## Account History

This is a statement of actual escrow account activity from January 2014 through February 2016. Compare it to the Projected Activity from the Previous Analysis which appears above the Account History.

Your total mortgage payment during the past year was $1,331.79 of which $738.67 was your Principal and Interest payment and $537.42 was your escrow payment.

| Date | Description | Payments | Disbursements | Balance |
|------|-------------|----------|---------------|---------|
| | BEGINNING BALANCE | | | -2,374.25 |
| 02/14 | | 1,806.48 | | -567.77 |
| 04/14 | CITY TAX | | 1,135.27 | -1,703.04 |
| 05/14 | | 1,186.24 | | -516.80 |
| 09/14 | SCHOOL TAX | | 4,395.68 * | -4,912.48 |
| 12/14 | HAZARD INS | | 1,020.00 * | -5,932.48 |
| 04/15 | CITY TAX | | 1,135.27 * | -7,067.75 |
| 09/15 | SCHOOL TAX | | 4,316.81 * | -11,384.56 |
| 12/15 | HAZARD INS | | 1,158.00 * | -12,542.56 |
| 03/16 | | 13,641.76 e | | 1,099.20 |
| TOTAL | | 16,634.48 | 13,161.03 | |

\* Indicates a difference from projected activity either in the amount or the date.

\*\* Required minimum escrow balance.

"e" Indicates estimates for future payments or disbursements.

If you have any questions about this analysis statement, please visit us at pnc.com/homehq to send us an email, write to us at PNC Mortgage; Attention: Customer Service Research; B6-YM07-01-7, PO Box 1820; Dayton, OH 45401 or call our Customer Service Department toll free number 1-800-822-5626.





Smith



SMITH

DOT/MTG-RECORDED

Prepared By:

**MICHELE BAUMAN**
**P.O. Box 8727**
**Dayton OH 45401-8727**

Return To:

**National City Bank**

**P.O. Box 8800**
**Dayton, OH 45401-880**
Parcel Number: 20|8H|1|13

Premises:
**202 POHOPOCO RD,**
**ALBRIGHTSVILLE, Pennsylvania 18210**

--------------- [Space Above This Line For Recording Data] ---------------

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

**(A) "Security Instrument"** means this document, which is dated  June 22, 2007
together with all Riders to this document.

**(B) "Borrower"** is

**TAMIKA M SMITH Unmarried**

Borrower is the mortgagor under this Security Instrument.

**(C) "Lender"** is National City Mortgage a division of
National City Bank

**PENNSYLVANIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3039  1/01

**VMP** **-6(PA)** (0506)
Page 1 of 16          Initials:

VMP Mortgage Solutions, Inc. (800)521-7291

REC Book 2309 Page 5485

Lender is a **National Banking Association**
organized and existing under the laws of **United States**
Lender's address is **3232 NEWMARK DRIVE, MIAMISBURG, OH  45342**

Lender is the mortgagee under this Security Instrument.

**(D)** "Note" means the promissory note signed by Borrower and dated **June 22, 2007**
The Note states that Borrower owes Lender
**TWO HUNDRED TWELVE THOUSAND & 00/100** Dollars
(U.S. $ **212,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **July 1, 2037** .

**(E)** "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

**(F)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

**(G)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

**(I)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

**(J)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K)** "Escrow Items" means those items that are described in Section 3.

**(L)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.

**(M)** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

Initials:

VMP®-6(PA) (0508)   Page 2 of 16   Form 3039  1/01

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the **County** [Type of Recording Jurisdiction]
of **Monroe** [Name of Recording Jurisdiction]:

which currently has the address of
202 POHOPOCO RD, [Street]
ALBRIGHTSVILLE [City], Pennsylvania 18210 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Initials:

-6(PA) (0508)     Page 3 of 16     Form 3039  1/01

Case 5:16-bk-00833-RNO    Doc 32-2    Filed 05/28/19    Entered 05/28/19 12:08:16    Desc
Main Document    Page 14 of 46

TAX CODE NO: ███████

## "SCHEDULE "A"-LEGAL DESCRIPTION

ALL THE FOLLOWING lot situate in the Township of Tunkhannock, County of Monroe and State of Pennsylvania, and being more particularly described as follows:

BEING ALL OF Lot 202 in Section P-1, as shown on Plotting of INDIAN MOUNTAIN LAKE DEVELOPMENT CORP., made by Leo A. Achterman Jr., dated March 1, 1973.

BEING the same premises which Ernest Cruciani and Helen Cruciani, H/W, by their Deed dated August 22, 2006 and recorded September 1, 2006, in the Office of the Recorder of Deeds, in and for Monroe County, Pennsylvania, in Record Book Volume 2279, page 4998, granted and conveyed unto Tamika M. Smith, in fee.

FURTHER BEING the same premises which Tamika M. Smith, by her Turn Key Deed dated October 20, 2006 and recorded October 26, 2006, in the Office of the Recorder of Deeds, in and for Monroe County, Pennsylvania, in Record Book Volume 2285, page 5701, granted and conveyed unto Falcon Crest Homes, Inc., grantor hereof, in fee.

UNDER AND SUBJECT to all the rights, privileges, benefits, easements, covenants, conditions, restrictions, reservations, terms and provisions as more particularly set forth in the chain of title.

BEING TAX CODE NO: ███████

Initial: JS.

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **22nd** day of
**June 2007** , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the
"Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to
**National City Mortgage a division of**
**National City Bank**

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:

**202 POHOPOCO RD, ALBRIGHTSVILLE, Pennsylvania 18210**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in

(the "Declaration"). The Property is a part of a planned unit development known as
**INDIAN MOUNTAIN LAKES**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association
or equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the
PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii)
articles of incorporation, trust instrument or any equivalent document which creates the
Owners Association; and (iii) any by-laws or other rules or regulations of the Owners
Association. Borrower shall promptly pay, when due, all dues and assessments imposed
pursuant to the Constituent Documents.

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT**
**Form 3150 1/01**

Page 1 of 3 Initials: _____

**®-7R** (0411)  VMP Mortgage Solutions, Inc. (800)521-7291

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _____.

Case 5:16-bk-00833-RNO Doc 32-2 Filed 05/28/19 Entered 05/28/19 12:08:16 Desc
Main Document Page 17 of 46

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)  
-Borrower

*Tamika M Smith* (Seal)  
TAMIKA M SMITH         -Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in

Case 5:16-bk-00833-RNO    Doc 84    Filed 05/29/19    Entered 05/29/19 13:25:01    Desc
Main Document    Page 19 of 46

full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the

Case 5:16-bk-00833-RNO   Doc 84   Filed 05/29/19   Entered 05/29/19 13:25:01   Desc
Main Document   Page 20 of 46
Case 5:16-bk-00833-RNO   Doc 82-2   Filed 05/28/19   Entered 05/28/19 12:08:16   Desc
Exhibit B - Part 2   Page 20 of 46

Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.


-6(PA) (0508)

Page 6 of 16

Initials: *JS*

Form 3039 1/01

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Case 5:16-bk-00833-RNO  Doc 32-2  Filed 05/28/19  Entered 05/28/19 13:25:01  Desc
Main Document  Page 23 of 46

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of

Initials: _____

Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

Case 5:16-bk-00833-RNO Doc 84 Filed 05/29/19 Entered 05/29/19 13:25:01a Desc
Case 5:16-bk-00833-RNO Doc 82 Filed 05/28/19 Entered 05/28/19 12:08:16 Desc
Main Document Page 26 of 46

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all

Initials: _____

Case 5:16-bk-00833-RNO   Doc 82-2   Filed 05/28/19   Entered 05/28/19 12:08:18   Desc
Main Document   Page 27 of 46

expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Initials: _____

Case 5:16-bk-00833-RNO    Doc 32-1    Filed 05/29/19    Entered 05/29/19 13:25:01    Desc
Main Document    Page 28 of 46

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

*Suzanne L. Morales*

_____ *Tamika M. Smith* (Seal)

TAMIKA M SMITH                                    -Borrower

_____

_____ (Seal)
                                                    -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                                    -Borrower

**COMMONWEALTH OF PENNSYLVANIA,** Monroe          **County ss:**

On this, the 22nd day of June, 2007 , before me, the undersigned officer, personally appeared

Tamika M. Smith

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

_Suzanne L. Morales_

_____
Title of Officer

> NOTARIAL SEAL
> SUZANNE L. MORALES, Notary Public
> Tunkhannock Township, Monroe County
> My Commission Expires March 3, 2009

**Certificate of Residence**

I, Suzanne L. Morales , do hereby certify that the correct address of the within-named Mortgagee is P.O. Box 8800, Dayton OH 45401

Witness my hand this 22nd day of June, 2007 .

_Suzanne L. Morales_
_____
Agent of Mortgagee

Initial: _D.S._

Case 5:16-bk-00833-RNO Doc 82 Filed 05/29/19 Entered 05/29/19 12:08:16 Desc
Main Document Page 31 of 46
Case 5:16-bk-00833-RNO Doc 84 Filed 05/29/19 Entered 05/29/19 13:25:01 Desc
Main Document Page 31 of 46



# COUNTY OF MONROE

### RECORDER OF DEEDS
**7th & MONROE STREETS**
**STROUDSBURG, PA 18360**
Area Code (570) 517-3969

Helen Diecidue - Recorder
Mary Ann Lesh - Chief Deputy
Jamie Butz - Deputy

**Instrument Number -** ██████████
Recorded On 6/29/2007 At 2:38:58 PM
* Instrument Type - MORTGAGE
  Invoice Number - ██████
* Mortgagor - SMITH, TAMIKA M
* Mortgagee - NATIONAL CITY MORTGAGE
  User - BLH
* Customer - GRAPEVINE SETTLEMENT SERVICES INC

**Book - 2309   Starting Page - 5485**
* Total Pages - 21

* **FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $10.00 |
| RECORDING FEES | $45.00 |
| AFFORDABLE HOUSING | $13.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $73.50 |

**RETURN DOCUMENT TO:**
GRAPEVINE SETTLEMENT SERVICES INC
PO BOX 637
SHAWNEE ON DELAWARE, PA 18356

TAX ID #
██████████

Total Tax IDs: 1



I Hereby CERTIFY that this document is recorded in the Recorder's Office of Monroe County, Pennsylvania

*Helen Diecidue*

---

**THIS IS A CERTIFICATION PAGE**

# Do Not Detach

**THIS PAGE IS NOW THE LAST PAGE**
**OF THIS LEGAL DOCUMENT**

---

\* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

BOOK: **2309** Page: **5505**


# NOTE

June 22 , 2007                SHAWNEE-ON-DELAWARE                PA
[Date]                                [City]                                [State]

**202 POHOPOCO RD, ALBRIGHTSVILLE, Pennsylvania 18210**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    212,000.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
**National City Mortgage a division of National City Bank**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    7.705   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   **1st**   day of each month beginning on   **August 1 , 2007**   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   **July 1, 2037**   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at      **National City Mortgage Co.**
**PO Box 533510, Atlanta, GA  30353-3510**                  or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $     1,512.21 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Wolters Kluwer Financial Services     **Form 3200 1/01**
VMP®-5N (0207).01
Page 1 of 3                          Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Case 5:16-bk-00833-RNO   Doc 82-1   Filed 05/28/19   Entered 05/28/19 12:08:18   Desc
Main Document      Page 34 of 46

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
TAMIKA M SMITH                  -Borrower

_____ (Seal)
                                -Borrower

PAY TO THE ORDER OF
NATIONAL CITY MORTGAGE CO
A SUBSIDIARY OF NATIONAL CITY BANK
WITHOUT RECOURSE
  NATIONAL CITY MORTGAGE CO, A DIVISION OF
NATIONAL CITY BANK

_____ (Seal)
                                -Borrower

LINDSAY R WILLIAMS
DOCUMENT CONTROL SPECIALIST

_____ (Seal)
                                -Borrower

PAY TO THE ORDER OF

_____ (Seal)
                                -Borrower

WITHOUT RECOURSE
NATIONAL CITY MORTGAGE CO
A SUBSIDIARY OF NATIONAL CITY BANK

_____ (Seal)
                                -Borrower

LINDSAY R WILLIAMS
DOCUMENT CONTROL SPECIALIST

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

*[Sign Original Only]*



HomeSaver Advance

**FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT AND PROMISSORY NOTE**

| 202 POHOPOCO RD | ALBRIGHTSVILLE | PA | 18210 |

[Property Address]

| Annual Percentage Rate | Finance Charge | Amount Financed | Total Of Payments |
|---|---|---|---|
| The cost of my credit as a yearly rate | The dollar amount the credit will cost me. | The amount of credit provided to me or on my behalf. | The amount I will have paid after I have made all payments as scheduled. |
| | | | |
| | | | |
| | | | |
| | | | |
| 4.64% | $3,701.13 | $9,073.26 | $12,774.39 |

☑ I want ☐ I do not want an itemization of the Amount Financed.

**Payment Schedule:**

| Number of Payments | Monthly Payments of | Payments are due Monthly beginning: |
|---|---|---|
| 6 | 0 | March 1, 2009 |
| 173 | $73.42 | September 1, 2009 |
| 1 | $73.11 | February 1, 2024 |

Late Charge: If a payment is not received by the end of the thirty (30) calendar days after the date it is due, you will be charged Five dollars ($5.00).

Prepayment: If you pay off this loan early, you will not have to pay a penalty. You will not be entitled to a refund of part of the finance charge.

See below for any additional information about nonpayment, default, any required repayment in full before the schedule date, and prepayment refunds and penalties

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $9,073.26 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is National City Mortgage Company with a principal place of business at 3232 Newmark Drive, Miamisburg OH 45342. I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note.

## 2. PAYMENTS/INTEREST

During the first six months from the date of this Note, no interest will be charged on the Principal balance and no payments will be due. After six months and continuing thereafter until the Maturity Date (as hereinafter defined), interest will be charged at the yearly rate of 5%. Beginning on September 1, 2009 and on the first of each month thereafter, I will pay principal and interest. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on the Maturity Date, I still owe amounts under this Note, I will pay those amounts in full on that date. "Maturity Date" is the earliest to occur of (i) the date of Property is sold or transferred other than by operation of law; or (ii) February 1, 2024 The 5% interest rate is the rate I will pay both before and after any default described in Section 3(B) of this Note. I have the right to make payments of Principal at any time before they are due without paying a Prepayment charge. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of the monthly payment.

## 3. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Lender has not received the full amount of any monthly payment by the end of the thirty (30) calendar days after the date it is due, I will pay a late charge equal to Five Dollars ($5.00).

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. The Lender may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means. Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time. If the Lender has required me to pay immediately in full as described herein, the Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**4. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Lender a notice of my different address. Any notice that must be given to the Lender under this Note will be given by delivering it or by mailing it by first class mail to the Lender at the address stated in Section 1 above or at a different address if I am given a notice of that different address. By providing the contact information in this Note, I hereby consent to the Lender's use of such information to contact me.

**5. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**6. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**7. NO BROKER**

I state that no person preformed any act as a broker in connection with the loan evidenced by this Note.

**8. STATE-SPECIFC NOTICES AND TERMS.**

**California:**

☐ If this box is checked, this Loan is made pursuant to the California Finance Lenders Law, Division 9 (commencing with Section 22000) of the Financial Code. The Lender's License Number is _____.

You understand that you may make any amount of paymet in the advance at any time. You may make a full prepayment or a partial prepayment at any time without paying any penalty. If you make a partial prepayment, there will be no delays in the due dates of your monthly payments, and no change in the monthly payments, and no change in the amount of your monthly payments (except for the amount of your final monthly payment), , unless we agree in writing to those delays or changes.

FOR INFORMATION CONTACT THE DEPARTMENT OF CORPORATIONS, STATE OF CALIFORNIA

**Maryland:** If this Note is signed in Maryland, it is governed by Title 12, Subtitle 10 of the Maryland Commercial Law Article

**Missouri:** **If this note is signed in Missouri, oral agreements or commitments to loan money, extend credit or to forbear from enforcing debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**New Hampshire:** If this note is signed in New Hampshire, reasonable attorney's fees shall be awarded to me if I prevail in (a) any action, suit or proceeding brought by the Lender; or (b) an action brought by me; and if I successfully assert a partial defense or set-off, recoupment or fees as the court considers equitable.

**Ohio:** If Lender is a registrant under the Ohio Second Mortgage Loan Act or a licensee under the Ohio Small Loan Act, this loan is made under the Interest Laws of the State of Ohio.

**Pennsylvania:** If this Note is signed in the state of Pennsylvania, this is a contract under seal and may be enforced under 42 Pa.C.S § 5529(b) (relating to twenty year limitation).

**South Dakota:** If this Note, is signed in South Dakota, any improprieties in making this loan or in loan practices may be reffered to the South Dakota Division of Banking. Such a referral may be made in writing to the Division at 217 1/2 West Missouri Avenue, Pierre South Dakota 57501 or by telephone to (605) 773-3421.

**Texas:** For Texas residents, if you are in default, we may require you to pay all you owe at once. We don't have to give you notice that we intend to demand or are demanding immediate payment of all that you owe.

**Utah:** If this note is signed in Utah, as required by Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations. This Note is a final expression of the agreement between the Lender and me, and this Note may not be contradicted by evidence of any alleged oral agreement.

For purposes of the following "NOTICE TO CO-SIGNER," "you" refers to the co-signer(s), if any.
NOTICE TO THE CO-SIGNER. YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED BELOW.

For purposes of the following NOTICES TO CONSUMER, "you" refers to Borrower(s).

NOTICE TO CONSUMER:

1. DO NOT SIGN THIS PAPER BEFORE YOU READ IT. 2. YOU ARE ENTITLED TO A COPY OF THIS PAPER. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO RECEIVE A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

The following notice is required by Wisconsin law.

NOTICE TO CONSUMER:

(a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED.

(b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.

(b) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.

(c) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE

_Tamika M Smith_ (Seal)    _____ (Seal)
TAMIKA M SMITH

_202 Pohopoco Road  Albrightsville PA_ _1/5/09_
Borrower Notice Address, if different from Property Address    _18210_    Date

_570-643-7229_    _646-342-2305_    _Tamikaga@aol.com_
Phone Number    Cell Phone Number    Email Address



## ASSIGNMENT OF MORTGAGE AND PROMISSORY NOTE

FOR VALUE RECEIVED, National City Mortgage Co., an Ohio Corporation, 3232 Newmark Drive, Miamisburg, Oh. 45342 (NCMC), hereby sells, transfers, sets over, and assigns to:

FANNIE MAE
MAIL DRAWER: ASSIGNMENTS
3900 WISCONSIN, NW
WASHINGTON, DC 20016

NCMC's entire right, title, and interest in and to the following described mortgage (the Mortgage) and promissory note (the Promissory Note) which are dated  6/22/2007.    and are in the original principal amount of $  212,000.00.   The Mortgage is described and identified by the following name(s) of the mortgagor(s), the date of recording, instrument number, and/or book number as recorded in  Monroe  County,  PA .

| MORTGAGOR(S) | INSTRUMENT NUMBER | BOOK&PAGE |
|---|---|---|
| TAMIKA M SMITH | | |

IN TESTIMONY WHEREOF, said  NATIONAL CITY MORTGAGE CO . has hereunto set its hands this date,  August 14, 2007.

WITNESS:

NATIONAL CITY MORTGAGE CO.

BY:

Name: BERLIN COMBS
Title:   LOAN REVIEW ADMINISTRATOR

STATE OF    OHIO            } SS:
COUNTY OF  MONTGOMERY)

On this date,  August 14, 2007 . before me, the undersigned, a Notary Public in and for said County and State, personally appeared  BERLIN COMBS  the  LOAN REVIEW ADMINISTRATOR   for an on behalf of National City Mortgage Co. and duly authorized to do so acknowledged the execution of the foregoing Assignment of Mortgage and Promissory Note as its voluntary act and deed for the uses and purposes therein contained.

KATHLEEN A MAJESK

Notary Public

My Commission Expires: 08/06/2011            My County of Residence: MONTGOMERY

This Instrument Prepared by:    NATIONAL CITY MORTGAGE CO.

Return To: National City Mortgage Co.




## ASSIGNMENT OF DEED OF TRUST AND PROMISSORY NOTE

FOR VALUE RECEIVED, __National City Mortgage, a division of__
__National City Bank_____, a National Banking Association,
3232 Newmark Drive, Miamisburg, Ohio 45342, hereby sells, transfers, sets over, and assigns to:

National City Mortgage Co. a subsidiary of National City Bank


National City Mortgage, a division of National City Bank
entire right, title, and interest in and to the following described Deed of Trust (the Deed of Trust) and promissory
note (the Promissory Note) which are dated ___June 22, 2007_____, and are in the original principal
amount of $_____212,000.00_____. The Deed of Trust is described and identified by the following
name(s) of the mortgagor(s), the date of recording, instrument number, and/or book number as recorded in
_____Monroe_____ County, _____Pennsylvania_____:

|  | INSTRUMENT |  |
|---|---|---|
| MORTGAGOR(S) | NUMBER | BOOK & PAGE |

TAMIKA M SMITH


IN TESTIMONY WHEREOF, said__National City Mortgage, a division of__
__National City Bank_____ has hereunto set its hands this _____18_____ day of
___July_____, ___2007___.

WITNESS:

*Leslie Hanley* (signature)

*Diana Lupo* (signature)

National City Mortgage,
a division of
National City Bank

By: *Belinda Duhl* (signature)

Name:   BELINDA M DUHL
Title:   LOAN REVIEW ADMINISTRATOR

STATE OF _____OHIO_____ )
                                        ) SS:
COUNTY OF _____MONTGOMERY_____ )

On this _____18_____ day of _____July_____, _____2007___, before me, the undersigned, a
Notary Public in and for said County and State, personally appeared _____BELINDA M DUHL_____, the
__LOAN REVIEW ADMINISTRATOR__ for and on behalf of __National City Mortgage,__
__a division of National City Bank_____, and duly authorized to do so acknowledged the
execution of the foregoing Assignment of Deed of Trust and Promissory Note as its voluntary act and deed for the
uses and purposes therein contained.

*Debra L. Conley* (signature)

DEBRA L. CONLEY
Notary Public

My Commission Expires:          01/12/2008          My County of Residence:   MONTGOMERY

This Instrument Prepared by:   National City Bank
                      Return to:   National City Bank
                                       P.O. Box 8800
                                       Dayton, OH 45401-8800

ASSINWD (06/06)



This Document Prepared By:
INGA JOHNSON
PNC MORTGAGE, A DIVISION OF
PNC BANK, NATIONAL
ASSOCIATION
3232 NEWMARK DR
MIAMISBURG, OH 45342

When recorded mail to: #
First American Title
Loss Mitigation Title Services 11759.1
P.O. Box 27670
Santa Ana, CA 92799
RE: SMITH - PROPERTY REPORT

Tax/Parcel No. 20/8H/1/13

[Space Above This Line for Recording Data]

| | |
|---|---|
| Original Principal Amount: $212,000.00 | Fannie Mae Loan No. |
| Unpaid Principal Amount: $234,391.64 | Loan No: |
| New Principal Amount $252,488.91 | |
| New Money (Cap): $18,097.27 | |

# LOAN MODIFICATION AGREEMENT (MORTGAGE)
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 1ST day of MAY, 2013, between
TAMIKA M SMITH UNMARRIED ("Borrower") whose address is 145 FAWN LN, ALBRIGHTSVILLE,
PA 18210 and PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION
("Lender"), whose address is 3232 NEWMARK DR, MIAMISBURG, OH 45342, amends and supplements
(1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), and Timely Payment Rewards
Rider, if any, dated JUNE 22, 2007 and recorded on JUNE 29, 2007 in INSTRUMENT NO. 200725058
BOOK 2309 PAGE 5485, of the OFFICIAL Records of MONROE COUNTY, PENNSYLVANIA, and (2)
the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal
property described in the Security Instrument and defined therein as the "Property", located at

**202 POHOPOCO RD, ALBRIGHTSVILLE, PENNSYLVANIA 18210**
(Property Address)

the real property described being set forth as follows:

## SEE ATTACHED LEGAL DESCRIPTION

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **MAY 1, 2013**, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. **$252,488.91**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. **$75,746.68** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The new Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$176,742.23**. Interest will be charged on the Interest Bearing Principal Balance at a yearly rate of 4.0000% from MAY 1, 2013. Borrower promises to make monthly payments of principal and interest of U.S. **$738.67** beginning on the 1ST day of **JUNE, 2013**. Borrower will continue to make monthly payments on the same day of each succeeding month until principal and interest are paid in full. If Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. The new Maturity Date will be **MAY 1, 2053**.

3. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing,

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform
Instrument Form 3179 (fixed) / 3162 (step) (rev. 01/09) 04182013_87
First American Mortgage Services                    Page 2

or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b)    all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7.    Borrower understands and agrees that:

(a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

8.    **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items.

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform
Instrument Form 3179 (fixed) / 3162 (step) (rev. 01/09) 04182013_87
First American Mortgage Services        Page 3

Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

9. By this paragraph, **Lender is notifying Borrower that** any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items. .

In Witness Whereof, the Lender have executed this Agreement.

PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION

By EILEEN BURRALL          (print name)                    5/10/13
   **Mortgage Officer**       (title)                         Date
_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

State of _Ohio_

County of _Montgomery_

The foregoing instrument was acknowledged before me this _____ _May 10, 2013_

(date) by **EILEEN BURRALL**, the **MORTGAGE OFFICER** of **PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION**, a_____,

national association, on behalf of the national association

SHARITA WISE
NOTARY PUBLIC
IN AND FOR THE STATE OF OHIO
MY COMMISSION EXPIRES SEPT, 30, 2015

Notary Public

Printed Name: _Sharita Wise_
My commission expires: _9-30-2015_

PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION
3232 NEWMARK DR
MIAMISBURG, OH 45342

In Witness Whereof, I have executed this Agreement.

_Tamika M Smith_ (Seal)                    _____ (Seal)
Borrower                                   Borrower
**TAMIKA M SMITH**
_5/8/13_
Date                                       Date

_____ (Seal)            _____ (Seal)
Borrower                                   Borrower

_____                   _____
Date                                       Date

_____ (Seal)            _____ (Seal)
Borrower                                   Borrower

_____                   _____
Date                                       Date

_____ [Space Below This Line for Acknowledgments] _____

**BORROWER ACKNOWLEDGMENT**

STATE OF ~~PENNSYLVANIA~~ New York
COUNTY OF Nassau

On this, the _8th_ day of _May 2013_, before me, the undersigned officer, personally appeared **TAMIKA M SMITH** known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument and acknowledged that _Tamika M Smith_ executed the same for the purpose herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My commission expires:                     _1/22/17_

                                           _Senn dir_
                                           Title of Officer    Notary Public

[Notary seal: SAMANTHA ALLEGRO, STATE OF NEW YORK, NOTARY PUBLIC, Qualified in Nassau County, 01AL6275202, MY COMMISSION EXPIRES 01/22/2017]